COMMONWEALTH of Pennsylvania,
Appellee

v.

Dereck MARTZ, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 2, 2007.
Filed June 6, 2007.

Leslie W. Bryden, Bloomsburg, for appellant.

Robert W. Buehner, Jr., Danville, for appellee.

BEFORE: HUDOCK, TODD and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Derek Martz appeals the judgment of sentence for corruption of minors and indecent assault on grounds that: 1) the trial court erred in denying his motion to dismiss pursuant to Pa. R.Crim.P. 600; 2) the trial court erred in determining that he is a sexually violent predator ("SVP"); 3) the evidence is insufficient to sustain his conviction; and 4) the convictions should merge for sentencing purposes. We affirm in part and vacate in part.

¶ 2 In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. *Commonwealth v. Frye*, 909 A.2d 853, 857 (Pa.Super.2006). Furthermore:

> The proper scope of review [ ... ] is limited to the evidence of record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1238–39 (2004) (*en banc* ).

¶ 3 So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. *Commonwealth v. Jones*, 886 A.2d 689, 699 (Pa.Super.2005).

¶ 4 Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600. Prompt Trial**

\* \* \* \*

**(A)** (3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

\* \* \* \*

**(C)** In determining the period of commencement of trial, there shall be excluded therefrom:

\* \* \* \*

(3) such period of delay at any stage of the proceedings as results from: [ ... ](b) any continuance granted at the request of the defendant or the defendant's attorney.

**(G)** For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. [ ... ].

Pa.R.Crim.P. 600.

¶ 5 In the context of Rule 600, there is a distinction between "excludable time" and "excusable delay." Unlike "excludable time," which is defined in Rule 600(C), *supra*, in pertinent part, "excusable delay" is not expressly defined in Rule 600, but the "legal construct takes into account de-

lays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence." *Hunt*, 858 A.2d at 1241.

¶ 6 If the Commonwealth attempts to bring a defendant to trial beyond the 365–day period prescribed by Rule 600, and the defendant files a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay. *Frye*, 909 A.2d at 857. Even where a violation of Rule 600 has occurred, we recognize:

> The motion to dismiss the charges should be denied if the Commonwealth exercised due diligence and the circumstances occasioning the postponement were beyond the control of the Commonwealth.
>
> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a *reasonable* effort has been put forth.
>
> Reasonable effort includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that defendant was brought to trial within the time prescribed by Rule 600.

*Id.* at 858 (*quoting Hunt*, 858 A.2d at 1241–42 (emphasis in original)).

¶ 7 Herein, a complaint was filed against Appellant on October 10, 2003. N.T. Rule 600 Hearing, 5/5/05, at 2. The mechanical run date for Appellant's trial under Rule 600(A)(3) was October 10, 2004. However, Appellant's case was not heard by a jury until June 22, 2005. *See* Court of Common Pleas of Montour County, Criminal Docket, at 1; Trial court opinion, 7/20/06, at 2 (unnumbered). The passage of 19 months from the date the complaint was filed exceeds by 7 months the time for bringing Appellant to trial under Rule 600. Unless

7 months are excludable/excusable from the run date, or it is proven by the Commonwealth that it exercised due diligence in bringing Appellant to trial beyond the 365–day run date, a violation of Rule 600 would be found and necessitate a dismissal of the charges. *See* Appellant's brief, at 23.

¶ 8 The record discloses that a hearing was conducted on May 5, 2005, to assess the merits of Appellant's Rule 600 motion. At the direction of the Commonwealth, the stenographer typed all of the court appearances related to this case, marked the document Commonwealth Exhibit No. 1, and introduced the exhibit into evidence, which recites a chronology of events relevant to the continuances granted herein; to-wit:

February 9, 2004

> [Assistant District Attorney]: [ ... ] [Appellant's counsel] fil[ed] a motion for continuance.
>
> THE COURT: We will grant the continuance and will enter [Appellant's counsel's] appearance[.]

\* \* \* \*

April 12, 2004

> [Assistant District Attorney]: [Commonwealth v. Appellant] is continued at the request of [Appellant's counsel]. [Counsel] represents [Appellant]. We still have not received a transcript of the preliminary hearing, which [Appellant's counsel] requested, and filed a motion to have a Court Stenographer there. So, that is why that is continued.

\* \* \* \*

June 15, 2004, Commonwealth vs. [Appellant.]

[Assistant District Attorney]: [Appellant], item three page one.

[Appellant's counsel]: Both parties, Commonwealth and the [Appellant], are waiting for discovery and transcript of a preliminary hearing. So, I don't have a problem with it being continued in this case.

THE COURT: What are you waiting on?

[Appellant's counsel]: I requested discovery from the District Attorney's Office. Myself and the District Attorney is [sic] waiting for a copy of the transcript from the preliminary hearing which has not been provided, despite repeated attempts to get that transcript.

THE COURT: [ ... ] Okay, that one will be continued a term then.

[Assistant District Attorney]: Yes, until August, your Honor.

THE COURT: We will grant the continuance.

* * * *

October 12, 2004, [Commonwealth vs. Appellant.]

[Assistant District Attorney]: In this particular matter, we are still waiting for [Appellant's counsel] to produce the transcript of the trial of the preliminary hearing in this matter, which [ ... ] is in his control a little bit, although it is a Court Stenographer in that case that has not been forthcoming to him as well. And, we need that to proceed to motions. [Appellant's counsel] ordered the transcript. This is on the pre-trial conference list for today. [Appellant's counsel] and I talked about this [and] we would request, if your Honor would consider it, to direct an order to the Court Stenographer to forthwith get the tran-

script. It has been quite awhile. I have no control over that.

* * * *

[Appellant's counsel]: She hasn't sent me a bill. We haven't gotten a bill, depending on how many pages there are. February 4th, 2003, I requested it. [ ... ].

* * * *

THE COURT: We will do an order[.]

* * * *

December 6, 2004, Commonwealth vs. [Appellant.]

[Assistant District Attorney]: We were [here] in October [of 2004] with [Appellant's counsel ... ]. And, at that time the Court issued a directive to the Court Stenographer at the preliminary hearing to prepare and disseminate copies of the transcript within 14 days of October 12th, 2004. That has not occurred. [ ... ] I talked to [Appellant's counsel]. He sent notices to her. She was aware. And, they had a conversation. I do have, and enter on record a letter from [Appellant's counsel] which came on Friday. He says in the letter, I will read it into the record: "This confirms the conversation of December 3, 2004. In our conversation I informed you that I would be requesting a continuance since I have still not received the transcript of the preliminary hearing."

And, I told him I would not object to that matter. So he is requesting a continuance.

THE COURT: We will grant a continuance for another term in the above action.

* * * *

February 7, 2005, Commonwealth vs. [Appellant.]

[Assistant District Attorney]: [Appellant's counsel] filed a motion to withdraw as counsel. Page eight item one.

[Appellant's counsel]: Your Honor, I filed a petition for withdrawal. And, the bases are contained in the petition. This was an unusual case in that we were waiting for a number of months, I was waiting for the transcript of a preliminary hearing. [ . . . ].

* * * *

[Assistant District Attorney]: If you might recall we have been waiting for that transcript and we had to ask the Court Reporter that was the stenographer that was doing it at the time to bring it forward. But, I still haven't received my copy.

[Appellant's counsel]: I haven't either. Although, I did receive communication from her telling me how much it costs. I relayed that to [Appellant] and said he had to pay that. And, I think I had a telephone conversation, maybe a month and a half ago, it has been a while, telling him I could not proceed and could not represent him unless I get paid and he gave me[ ] money for the transcript. That's where we are at.

* * * *

[Appellant's counsel]: [Appellant] paid an initial retainer, which basically took us through the preliminary hearing. And, then I started billing him after we used up that initial retainer. And, your Honor, I am not sure when I started billing him when we used up the initial retainer. Actually, [Appellant] may remember that. I know it

has been back at least a year because I went back [in my billing records] to January 2004.

* * * *

[Appellant's counsel]: [ . . . ] I am not going to advance costs for the costs of the transcript. The cost of the transcript was $300.00. I just think at this time I can withdraw without prejudicing my client. He can find other counsel.

THE COURT: I don't know if you can. Where are we in the process?

[Assistant District Attorney]: I'd like to have tried this a while ago. We are waiting for the transcript. [Appellant's counsel] has been requesting and never got. He filed continuances. I am ready to go.

* * * *

[Appellant's counsel]: One of the options [available for Appellant's failure to pay counsel fees], your Honor, is I just filed the petition to withdraw. Frankly, I wanted to generate some reaction from my client. I figured that would get somebody's attention. And, I think it did. One of the things that the District Attorney talked about was we could schedule the hearing on my petition to withdraw in a month or so. I think [Appellant] would probably be in touch with me shortly. And I may withdraw the petition or I may say—

THE COURT: Let's tell the stenographer that we will put her invoice in. I don't usually do this. Let's put her invoice on as a cost, not a cost of prosecution. Well, we will add it as an assessment to the costs in the event there is a conviction.

\* \* \* \*

[Appellant's counsel]: That is what she is may be *[sic]* concerned about. I will communicate that to her and maybe she will say I will provide it to you. Or maybe [Appellant] will come up with the money.

[Assistant District Attorney]: Judge, shall we schedule this for the next Court date? March 30? Is that when I am taking the motion to withdraw? THE COURT: Schedule it just for the April term, and depending on how the developments go [Appellant's counsel] will either renew his motion to withdraw or he will withdraw it. And then you will nowhere *[sic]* to go. [ . . . ].

N.T. Continuance Colloquy, at 2–5, 8–10, 12, 14, 16–17; Record No. 45.

¶ 9 What is to be gleaned from the preceding colloquy involving the trial court, the assistant district attorney, and trial counsel is that the case was not moving forward until the stenographic notes from the preliminary hearing were transcribed for review by trial counsel. Before the stenographer would transcribe the notes, she wanted paid the transcription fee of $270.50, which trial counsel was not willing to advance. To this tangled web of "no payment/no transcript" scenario, we have trial counsel seeking to withdraw be-

cause of Appellant's failure to pay beyond a retainer fee, which was consumed shortly after completion of the preliminary hearing.

¶ 10 Viewing the facts in a light most favorable to the Commonwealth, *Hunt*, supra, the events under scrutiny here spanned a period beginning with June 15, 2004 [1] (trial counsel did not object to continuance until August of 2004 to secure preliminary hearing transcript); October 12, 2004 (trial counsel did *not object to* order directing court stenographer to prepare and disseminate copies of preliminary hearing transcript; trial was continued until order complied with); December 6, 2004 (letter from trial counsel dated December 3, 2004, was read into the record by the Commonwealth, which requested a continuance because trial counsel had yet to receive the preliminary hearing transcript; continuance granted); and February 7, 2005 (trial counsel's motion to withdraw was held in abeyance to allow Appellant to pay cost of preliminary hearing transcript or ascertain court reporter's willingness to prepare and release notes with inclusion of her fee in Appellant's court costs payable if convicted; trial counsel and Appellant joined continuance until April of 2005 term of court).

¶ 11 The time encompassed between June of 2004 and April of 2005 exceeds the

---

1. Our starting date skips the February 9th and April 12th of 2004 continuances requested by the Commonwealth because there is no documentation of record that trial counsel was present at the proceedings, prepared a motion seeking the continuances, or executed a document joining in the two continuances. *Cf.* Pa.R.Crim.P. 106(A) (the trial court may grant a continuance on the motion of either party); Rule 600(C)(3) (delay granted at request of the defendant or the defendant's attorney). Even the prosecutor laments the fact that he relied upon counsel for Appellant's statement of difficulty in securing the preliminary hearing transcript, and his need for the

Commonwealth to join in and obtain a continuance on Appellant's behalf without his presence at the proceeding. *See* N.T. Rule 600 Hearing, 5/5/05, at 13 (Assistant District Attorney: "I took him at his word again, your Honor. And, past tense, he was telling me outside the Court 'I am having trouble getting this [preliminary hearing transcript] thing from [the stenographer].' [ . . . ] I guess from now on I will have to adopt a different tact with [Appellant's counsel] if he is going to continue this and he says he is going to file a motion. I will insist on it in writing. I can't take him at his word anymore.").

needed 7–month excludable time under Rule 600, which temporal passage nullifies Appellant's claim that his right to a speedy trial was violated, and promotes the dual purpose of Rule 600 of protecting society's right to effective prosecution of criminal cases. *Frye, supra.*

¶ 12 Next, we examine Appellant's claim that the trial court erred in ruling that he is an SVP, which determination was predicated upon the "expert's conclusions [ ... ] based on facts not in the record or blatantly incorrect." *See* Appellant's brief, at 17–18. We read Appellant's claim to be one assailing the sufficiency of the evidence regarding the SVP label assigned by the trial court.

¶ 13 In reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied. *Commonwealth v. Haughwout,* 837 A.2d 480, 484 (Pa.Super.2003).

¶ 14 We conclude that ample evidence was presented by the Commonwealth to prove Appellant is an SVP. Under Pennsylvania's Megan's Law III, 42 Pa.C.S.A. §§ 9791–99, an SVP is defined as "a person who has been convicted of a sexually violent offense [ ... ] and who is determined to be a sexually violent predator under section 9795.4 [ ... ] due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792, **Definitions.** Mental abnormality is "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a men-

ace to the health and safety of other persons." *Id.* Moreover, predatory is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." *Id.*

¶ 15 The statute specifically details the process by which an individual is determined to be an SVP. After an individual is convicted of an enumerated offense under section 9795.1, **Registration,** the trial court must order the State Sexual Offenders Assessment Board ("Board") to determine whether the individual qualifies for SVP classification. *See* 42 Pa.C.S.A. § 9795.4, **Assessment.** An administrative officer of the Board then assigns one of its members to conduct an assessment. The determination of whether an individual should be classified as an SVP is governed by examination of the following factors:

**(1) Facts of the current offense, including:**

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

**(2) Prior offense history, including:**

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

**(3) Characteristics of the individual, including:**

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

**(4) Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.**

42 Pa.C.S.A. § 9795.4(b). Following the submission of a written assessment report and a praecipe filed by the district attorney, the trial court must hold a hearing. During the hearing, the Commonwealth bears the burden of proving the defendant is an SVP by clear and convincing evidence. 42 Pa.C.S.A. § 9795.4(e)(3); *see also Commonwealth v. Charlton,* 902 A.2d 554, 563–65 (Pa.Super.2006).

¶ 16 Appellant was convicted of corruption of minors and indecent assault, all enumerated offenses under section 9795.1. *See Commonwealth v. Leddington,* 908 A.2d 328 (Pa.Super.2006). A Megan's Law hearing was held on February 14, 2006, at which the Commonwealth presented the expert testimony of C. Townsend Velkoff, a licensed psychologist who was appointed by the Board to conduct a clinical evaluation and assessment of Appellant. Notably, Appellant did not provide an expert to counter Dr. Velkoff's testimony, but he stipulated to the witness' qualifications as an expert.

¶ 17 Initially, Dr. Velkoff stated he reviewed all the material provided by the Board relating to Appellant's criminal charges, which included: 1) the court order; 2) the Board's investigator's report; 3) documents from the Montour County District Attorney's Office; 4) documents from the Montour County Juvenile Probation Department; 5) documents from the Geisinger Medical Center; 6) Childline documents; and 6) transcripts of the jury trial held in June of 2005. Additionally, Dr. Velkoff indicated his awareness of the charges filed: Appellant sexually molested an 11–year–old female while she slept in her bed, which occurred after the mother and babysitter left the household. Lastly, Dr. Velkoff reviewed all the criteria set forth in 42 Pa.C.S.A. § 9795.4(b), which assessment was contained in a report dated September 10, 2005, and admitted into evidence without objection by Appellant. N.T. Sexually Violent Predator Hearing, 2/14/06, at 10.

¶ 18 Dr. Velkoff admitted that Appellant did not meet the criteria to be diagnosed a pedophile because the present offenses constituted a one time incident. Nonetheless, the expert concluded that Appellant possessed a personality and anti-social personality disorder. Dr. Velkoff further noted that Appellant exhibited three primary behaviors representative of predatory status. First, Appellant came to the household when the victim's mother was away working. Second, Appellant waited until the babysitter left the household before entering the victim's bedroom. Third, Appellant fondled the victim's vaginal area outside her clothing. Based upon a review of the facts against the backdrop of the applicable law, Dr. Velkoff opined that Appellant was an SVP under Pennsylvania law. N.T. Sexually Violent Predator Hearing, 2/14/06, at 18.

¶ 19 We do not take issue with Dr. Velkoff's opinion labeling Appellant an SVP, and this conclusion is not weakened by the fact that the expert made reference to

Appellant's touching the victim's breasts on the same occasion he touched her vaginal area, but could not recall where the "breast" touching was indicated in the record. Dr. Velkoff clarified that the basis for labeling Appellant an SVP did not hinge upon whether he touched the victim's breasts thusly:

[Appellant's counsel]:

Q. Are you saying that there is some[where] in the information you received, the documents you received, that stated that [Appellant] fondled both the breasts and the vaginal area? I am not aware of any allegation like that?

[Dr. Velkoff]:

A. I could have made an error in saying that he touched her breast.

Q. Of the three primary behaviors that you stated represent predatory behavior, [ . . . ] the third one, [ . . . t]here is documentation, and I think we can all find that, which states that the [Appellant] fondled the victim's vaginal area above the clothing. But, there is no information, you would agree, that indicates that he fondled the victim's breasts?

A. Correct.

Q. And it would be relevant to your finding of predatory behavior that the [Appellant] would not just touch one area but multiple sexually-related areas of the body, correct? That would be an important finding?

A. Whether he touched her breasts or vaginal area?

Q. Yes.

A. Not particularly. If he is touching her sexually that is important.

Q. You are saying it wouldn't make any difference whether he touched one time one area, or touched five times in different areas? Wouldn't

that be relevant in determining the—

A. Not particularly. Because, what I would be concerned about is does that behavior reflect a mental abnormality. And I have ruled that out because we only have the one incident. And so I relied more on the file information about [Appellant's] history that was associated with personality disorder. So, whether specifically [Appellant] touched the breasts or only the breasts or only the vaginal area is not particularly important.

N.T. Sexually Violent Predator Hearing, 2/14/06, at 24–25.

¶ 20 Based on the foregoing, the evidence is clearly and convincingly sufficient to support the trial court's determination that Appellant is an SVP. Accordingly, Appellant's claim to the contrary must fail.

¶ 21 We now turn to Appellant's third issue, which avers that the jury did not have sufficient evidence to convict him of indecent assault and corruption of minors.

¶ 22 Before addressing the merits of Appellant's claim, we must decide whether it is reviewable. First, we observe that the contention raised by Appellant necessitates a review of the trial transcript dated June 22, 2005, to determine if the evidence presented by the Commonwealth was sufficient to prove Appellant guilty of indecent assault and corruption of minors beyond a reasonable doubt. *See* Appellant's brief, at 18–19. However, a review of the certified record shows no reference to the inclusion of the trial transcript for our review.

¶ 23 It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case. *Commonwealth v. Boyd*, 451 Pa.Super. 404, 679 A.2d 1284,

1290 (1996) *(citing Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974)). It is also well-settled in this jurisdiction that it is Appellant's responsibility to supply this Court with a complete record for purposes of review. *Commonwealth v. Hallock,* 722 A.2d 180, 181 (Pa.Super.1998). "A failure by [A]ppellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined." *Boyd,* 679 A.2d at 1290 *(quoting Smith v. Smith,* 431 Pa.Super. 588, 637 A.2d 622, 623 (1993), *allocatur denied,* 539 Pa. 680, 652 A.2d 1325 (1994)).

¶ 24 Because we have been presented with no evidence of record to support the insufficiency of the evidence claim raised by Appellant, the course to pursue is well-marked and directs that, where the Appellant is remiss in fulfilling the duty to provide a record which is sufficient to permit meaningful appellate review as is the case here, the issue raised challenging the sufficiency of the evidence will be deemed waived. *Boyd,* 679 A.2d at 1290.

¶ 25 Finally, Appellant contends that the sentences for indecent assault and corruption of minors should merge for sentencing purposes. This issue was raised in Appellant's Pa.R.A.P.1925(b) statement. *See* Record Nos. 41–43. Furthermore, Appellant raises a non-waivable challenge to the legality of the sentence. *Commonwealth v. Berry,* 877 A.2d 479, 482 (Pa.Super.2005) *(en banc), allocatur denied,* 591 Pa. 688, 917 A.2d 844, 2007 Pa. LEXIS 92 (filed January 11, 2007).

¶ 26 Our review of the record discloses that the trial court has responded to this issue by ruling that because the two offenses arose out of one act, "the sentence for the two crimes must merge for the purposes of sentencing." Trial court opinion, 8/15/06, at 3. However, the trial court

no longer had jurisdiction to amend the sentence as the sentence was imposed on February 22, 2006, and Appellant appealed. *See* 42 Pa.C.S.A. § 5505 (Except as otherwise provided or proscribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.) Once this 30-day period has expired or once a defendant files a notice of appeal, however, the trial court is without jurisdiction to alter or modify its order. *Commonwealth v. Smith,* 451 Pa.Super. 192, 678 A.2d 1206, 1208 (1996); *Commonwealth v. Moran,* 823 A.2d 923, 925 (Pa.Super.2003). The trial court can correct a mistake that is patent or obvious, such as the trial court's correction of credit for time served. *See Commonwealth v. Wesley,* 455 Pa.Super. 343, 688 A.2d 201, 203 (1997). However, the application of the merger doctrine is not a patent or obvious mistake. Accordingly, we find that the trial court erred when it amended the sentence and ordered that the sentences merged. However, we are able to address the merger issue as Appellant properly raised and argued the issue before this Court.

¶ 27 Most recently, a panel of this Court in *Commonwealth v. Williams,* 920 A.2d 887 (Pa.Super.2007), had occasion to discuss the merger doctrine in the context of whether the trial court erred in imposing consecutive sentences for Appellant's plea of guilty to firearms possessed by a felon and carrying a firearm without a license. The first weapons charge arose from the fact that Appellant possessed the weapon while being a convicted felon. The second weapons charge arose from the fact that Appellant did not have a license to carry the weapon, but both charges arose out of a single fact pattern.

¶ 28 *Williams* also noted that the Pennsylvania Supreme Court had failed to garner a consensus on the question of merger in its most recent pronouncement on the subject in *Commonwealth v. Jones,* 590 Pa. 356, 912 A.2d 815 (2006), *reargument denied,* 2007 Pa. LEXIS 381 (filed February 20, 2007), which discussed the interplay among the double jeopardy principles, Supreme Court case law, and the 2002 statute enacted by the Legislature to govern merger.[2] In point of fact, *Jones* produced a "lead opinion" and a "dissenting opinion" as to the manner and method of addressing merger. Justices Cappy and Baer joined Justice Castille's lead opinion, which espoused an approach that looked at whether the defendant was charged and convicted on a single set of facts. The lead opinion held that charges of criminal trespass and burglary merged for sentencing purposes under the facts of that case.

¶ 29 In contrast, the dissent's position was authored by Justice Newman, joined by Justice Eakin and in relevant part by Justice Saylor, which adopted the approach to merger set forth in Section 9765 ("[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense."). Justice Nigro did not participate in the decision. In *Jones,* because neither approach garnered the votes of a majority of the high Court, the *Williams'* Court adopted the dissent's position as more accurately reflective of the Pennsylvania Su-

perior Court's jurisprudence on merger. *Williams,* 920 A.2d 887, 891. As a consequence, we held that the trial court did not err as a matter of law by imposing separate sentences for the weapons offenses.

¶ 30 Applying the approach in *Jones* espoused by the dissent and adopted by this Court in *Williams,* we need to assess whether the charges arose out of a single set of facts **and** whether **all** the statutory elements of one offense coincide with the statutory elements of the other offense. In the case *sub judice,* albeit both convictions arose out of the same set of facts, 18 Pa.C.S.A. § 6301(a)(1) (corruption of minors) contains a statutory element that 18 Pa.C.S.A. § 3126(a)(7) (indecent assault) does not; namely, a person eighteen years and upwards engages in "any act" which corrupts or tends to corrupt the morals of a minor less than eighteen years of age is guilty of violating Section 6301(a)(1). Under Section 6301(a)(1), the Commonwealth need not prove that the defendant had "indecent contact" with the complainant to be guilty of corruption of minors, "any act" which tends to corrupt the minor contravenes the statute. In contrast, to be guilty of violating Section 3126(a)(7), the complainant has to be less than thirteen years of age and the defendant must have had "indecent contact" with the complainant, whereas "any act" engaged in by the defendant tending to corrupt the complainant will constitute a violation of Section 6301(a)(1).

¶ 31 Therefore, consistent with *Jones* and *Williams,* we hold that Appellant's

---

**2.** The statute under review states:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765 (effective February 7, 2003). At bar, Appellant's offenses arose in or about April of 2003 and continued until August of 2003, which time frame renders Section 9765 applicable to the present fact pattern. *See* Record No. 10 (criminal information filed by district attorney).

convictions for corruption of minors and indecent assault did not merge for sentencing purposes. Accordingly, we vacate the amended sentencing order and direct the trial court to reinstate the original sentence.

¶ 32 To summarize, we find Appellant's Rule 600 claim, SVP status contention, and insufficiency of the evidence argument to be meritless. As the trial court was without jurisdiction to amend the sentence and Appellant's claim that the sentences merged is without merit, we vacate the amended sentencing order of August 15, 2006, and direct the trial court to reinstate the original sentence of February 22, 2006, as consistent with *Jones* and *Williams.*

¶ 33 Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions to reinstate the original sentence. Jurisdiction relinquished.