J-S37004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER LAWSON | |
| Appellant | No. 1863 EDA 2014 |

Appeal from the Judgment of Sentence May 28, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004465-2012

BEFORE: GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:                           **FILED JULY 30, 2015**

Appellant, Christopher Lawson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for receiving stolen property and unauthorized use of automobiles and other vehicles ("unauthorized use").[1] We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> Samantha Stewart testified that on October 6, 2011, in the area of 1600 Winton Street, Philadelphia, PA, at approximately [1:00] a.m., she looked out of the window of her home at an incident down the street that involved police officers. Ms. Stewart stated she saw a light skinned man come out of an alley, stand against the wall, and approach the car owned by her child's father, Mr. Don

---

[1] 18 Pa.C.S.A. §§ 3925 and 3928, respectively.

Allen. … [Ms. Stewart] described the man as slim, wearing "big clothes," specifically, a gray hoodie and white t-shirt. She said she saw the man look around, stick a key into the car, and drive off.

Ms. Stewart testified that she ran to tell Mr. Allen what had happened and proceeded outside. She stated that Mr. Allen called the police. …

On cross-examination, Ms. Stewart stated that she gave a statement to police describing two light skinned males, appearing to be drunk and staggering, coming out of the alley. She also testified that the males "looked like either white or Spanish."

Mr. Don Allen testified that he resides on the 600 block of Winton Street. He stated that he was informed by [Ms. Stewart] on October 6, 2011, that his vehicle was stolen, looked outside for himself, and saw that the vehicle was not there. Mr. Allen testified that he last saw his vehicle at about [11:00] p.m. or 11:15 p.m. when he returned from fishing and parked it in front of 610 Winton Street. He stated that he locked the doors and that he did not give permission to anyone to use his vehicle. He also stated that he had one set of car keys to the vehicle that belonged to him.

After [Mr. Allen] found his vehicle was missing, he notified police officers on the 700 block of Winton Street and asked them to put a bulletin out on his vehicle, a two-door, black, Honda V-tech, with license plate number HST-9944. Approximately two-and-a-half (2½) hours later, police officers notified Mr. Allen that they located his vehicle at or about Franklin and Cumberland or Huntingdon and Cumberland. After Mr. Allen retrieved his vehicle from that area, he stated that there was no damage, but that his radio and lottery tickets were missing.

Police Officer Ann Brown testified that in the early morning of October 6, 2011, she and her partner, Officer Coleman, responded to a theft of a vehicle on 618 Winton Street. [Officer Brown] received information that the vehicle was last seen going eastbound on Winton Street. Officer Brown stated that in her fourteen years of experience with the

Third District she has learned that:

> Hondas are the kind of cars that are stolen in the Third District. And usually 80 percent of them come from North Philly into South Philly riding 95 up and down. So my partner and I, we decided to go down Delaware Avenue and sit on 95. If you go on Delaware Avenue, you got 76 entrance, and then you go down a little bit more, it's 95. But if you pick up 76, it kind of merges where 95 comes this way and 76. So it's like a triangle where you could actually sit there.

Four (4) to five (5) minutes after the radio call, Officer Brown testified that she, the passenger, and her partner, the driver, were sitting at that "little merge," about six blocks from the location of the theft, when she observed a black Honda, with a matching license plate number on I-95 North. She described the driver as a white male with a goatee, red hat, and orange colored jacket and stated that she had a four (4) to five (5) second side view look. Police Officer Brown and her partner activated their lights and sirens and attempted to pull the vehicle over. The vehicle was going approximately forty-five (45) miles per hour with its headlights off. The vehicle did not stop, instead, it got off at Allegheny Avenue. The officers reported that they were in pursuit of the vehicle and relayed this information over police radio[, at] which time…the officers stopped pursuing the vehicle per the order of their sergeant due to police jurisdictional issues.

Another five (5) to ten (10) minutes later, Officer Brown was informed via police radio that a male was stopped on the 2600 block of Frankford Avenue. She and her partner went to the location, where she identified [Appellant] to be the driver of the stolen vehicle. Officer Brown stated she did not prepare [a] biographical information document for [Appellant] nor did her partner because the vehicle was found in the 26th District and police officers from that district handled the paperwork. However, Officer Brown did write up three citations for [Appellant]: unlicensed driver, driving without headlights, and reckless driving.

On cross-examination, Officer Brown stated that after she

positively identified [Appellant], she cited him for reckless driving because he was weaving in and out of lanes. … [Appellant] was found a block-and-a-half from where officers recovered the vehicle at Emerald and Huntingdon.

Police Officer Anthony Sampson testified that on October 6, 2011, at around [1:00] a.m., he was investigating a possible stolen vehicle with his canine partner, Arko. [Officer Sampson] stated that he acted on a flash for a white male, goatee, mustache, and a red hat and proceeded with a grid search for the male in the area of Emerald and Huntingdon. Officer Sampson stated that as he was coming up Cumberland Street eastbound, he went northbound on Frankford Avenue, and observed a male to his left. Officer Sampson testified that [Appellant] was coming off of East Sergeant Street. [Appellant] saw the officer and began walking northbound on Frankford Avenue where he was stopped at Frankford Avenue and Huntingdon Street.

Officer Sampson held [Appellant] for investigation and requested that Officer Brown come to the location for identification. Officer Sampson stated that Police Officer Coleman and Police Officer Brown positively identified [Appellant]. [Officer Sampson] said [Appellant] was a white male, with a goatee and mustache, wearing a red hat and orange black jacket that resembled a Philadelphia Flyers jacket.

[] Officer Sampson testified that no keys, tools, radio, or lottery tickets were found on [Appellant]. When questioned whether [Appellant] appeared intoxicated or staggering, [Officer Sampson] could not confirm. Officer Sampson stated that he did not prepare the police form 75-229, which is typically prepared after an arrest is effectuated and indicates the clothing [Appellant] was wearing as well as biographical information.

(Trial Court Opinion, filed October 31, 2014, at 2-6) (footnote and internal citations to the record omitted). Procedurally, following a bench trial, the court convicted Appellant on May 28, 2014, of receiving stolen property and

- 4 -

unauthorized use. On that same date, the court sentenced Appellant to thirty-six (36) months' probation for the receiving stolen property conviction. The court imposed no further penalty for unauthorized use. Appellant filed a timely notice of appeal on June 24, 2014. The court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b); Appellant timely complied.

Appellant raises the following issues for our review:

> WHETHER THE SUFFICIENCY OF THE EVIDENCE WAS SUBSTANTIAL ENOUGH TO SUPPORT CONVICTIONS FOR THE CHARGES OF RECEIVING STOLEN PROPERTY AND UNAUTHORIZED USE OF AUTOMOBILE WHERE IDENTIFICATION OF…APPELLANT AS TESTIFIED TO BY THE IDENTIFYING POLICE OFFICER WAS SCIENTIFICALLY IMPOSSIBLE.
>
> DID THE TRIAL COURT ERR IN SUSTAINING THE OBJECTION TO A QUESTION TO OFFICER SAMPSON REGARDING INFORMATION ON THE POLICE FORM 229 WHERE THE DRIVER OF THE VEHICLE WAS DESCRIBED AS HAVING A BACK PACK AND WEARING CERTAIN CLOTHING (IDENTITY BEING THE SOLE ISSUE)[?]
>
> WHETHER THE TRIAL COURT ERRED IN FAILING TO MERGE THE CHARGES OF RSP AND UNAUTHORIZED USE OF AUTO AND FAILING TO FASHION A SENTENCE THAT ACCOUNTED FOR THE TIME CREDIT PROPERLY DUE TO…APPELLANT.

(Appellant's Brief at 10).

In his first issue, Appellant argues the Commonwealth failed to prove Appellant was the driver of Mr. Allen's car. Appellant contends Ms. Stewart's testimony was contradictory and unreliable because she testified that she saw a man use a key to steal Mr. Allen's car even though Mr. Allen stated he

possessed the only key to the car and did not give it to anyone; Ms. Stewart admitted she did not have a clear view of the person who stole the car; Ms. Stewart initially told police two males were involved in the theft but later testified she saw only one male; and she indicated the individuals were highly inebriated even though the officer who arrested Appellant testified that Appellant was not intoxicated. Appellant likewise asserts Officer Brown's show-up identification of Appellant was unreliable because she had mere milliseconds to observe Appellant as he drove past her at 45 MPH in the middle of the night. Appellant insists "[n]o human eye can make out the detail the officer claims she saw in that short a period of time." (Appellant's Brief at 23). Appellant contends his challenge to Officer Brown's testimony goes to the sufficiency of the evidence because it concerns "scientific impossibility" not witness credibility. (*Id.* at 27). Appellant further argues any number of people in the area of Appellant's arrest could have fit Officer Brown's scant description of Appellant's facial hair and clothing. Appellant states Officer Sampson, who arrested Appellant, did not see Appellant near the car and found no key, car radio, or lottery tickets on Appellant's person. Appellant claims he did not flee when the officers approached him, which reflects a lack of consciousness of guilt. Appellant asserts that to the extent his arguments go to the weight of the evidence, he had no opportunity to file a timely post-sentence motion preserving this issue because his counsel withdrew immediately after sentencing. Appellant concludes he is entitled to

an acquittal. We cannot agree.

Preliminarily, "credibility determinations are made by the fact finder and…challenges thereto go to the weight, and not the sufficiency, of the evidence." ***Commonwealth v. Gaskins***, 692 A.2d 224, 227 (Pa.Super. 1997). ***See also Commonwealth v. Griffin***, 65 A.3d 932 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013) (stating defendant's claim he was wrongly identified as perpetrator of crimes based on "unbelievable identification testimony" went to witness' credibility and challenged weight, not sufficiency, of evidence). A challenge to the weight of the evidence must be preserved in a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

**Rule 607. Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." ***Commonwealth v. Gillard***, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal*

*denied*, 581 Pa. 672, 863 A.2d 1143 (2004). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. ***Commonwealth v. Burkett***, 830 A.2d 1034 (Pa.Super. 2003). An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. ***Id.***

Instantly, Appellant's purported challenge to the "sufficiency" of the evidence consists primarily of assertions that the Commonwealth witnesses' testimony was unreliable. These arguments go to the weight of the evidence, not its sufficiency. ***See Griffin, supra***; ***Gaskins, supra***. Appellant's other contentions—that he did not flee from Officer Sampson and the officer found no incriminating evidence on Appellant's person—likewise implicate the weight of the evidence. Appellant failed to raise a weight claim before the trial court at any time in a motion for a new trial. Rather, Appellant raised his weight challenge for the first time in his Rule 1925(b) statement. Appellant cites no authority for the proposition that counsel's withdrawal following trial/sentencing excused Appellant's complete failure to file a motion for a new trial at any post-trial stage of the proceedings. Even after Appellant was appointed new counsel less than thirty days following the trial/sentencing, Appellant made no attempt to file a post-sentence motion *nunc pro tunc*. ***See Commonwealth v. Dreves***, 839 A.2d 1122 (Pa.Super.

2003) (stating trial court may exercise discretion to grant post-sentence motion *nunc pro tunc* within thirty days after imposition of sentence if no appeal has been filed). Thus, Appellant's first issue on appeal is waived.[2] **See** Pa.R.Crim.P. 607; **Gillard, supra**; **Burkett, supra**.

In his second issue, Appellant argues Officer Sampson's testimony regarding Appellant's clothing contradicted information in the form 75-229 biographical information report completed after Appellant's arrest. Appellant asserts the report, which lacked a signature, indicated Appellant was in blue jeans and a white t-shirt when he was arrested, whereas Officer Sampson testified that Appellant was wearing an orange jacket and a red hat. Appellant contends the court should have allowed him to use the document, which was duly authenticated, to impeach Officer Sampson's testimony. Appellant concludes the court erred when it sustained the Commonwealth's objection to the use of the biographical information report for purposes of impeachment. We disagree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused

_____

[2] Moreover, Appellant improperly presents new evidence in the form of a "mathematical analysis" to support his contention that Officer Brown's identification of Appellant was "scientifically impossible." Appellant failed to introduce this evidence before the trial court. Therefore, we cannot consider it. **See Commonwealth v. Martz**, 926 A.2d 514 (Pa.Super. 2007) (stating appellate court cannot consider anything which is not part of certified record in case); **Commonwealth v. Evans**, 473 A.2d 606 (Pa.Super. 1984) (stating information in brief does not constitute evidence of record).

its discretion." ***Commonwealth v. Drumheller***, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa.Super. 2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007).

"The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules." Pa.R.E. 607(b). "[W]hen attempting to discredit a witness' testimony by means of a prior inconsistent statement, the statement must have been made or adopted by the witness whose credibility is being impeached." ***Commonwealth v. Simmons***, 541 Pa. 211, 245, 662 A.2d 621, 638 (1995), *cert. denied*, 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996).

Instantly, the trial court reasoned as follows:

> [T]here was no signature on the form 75-229 or name to indicate its authenticity or origin. Furthermore, Officer Sampson stated that he did not fill out the form 75-229. Officer Sampson noted that the incident originated in South Philadelphia and ended in a totally different police division. Due to jurisdictional issues, [Appellant] was taken to police districts in both South and East police divisions after his arrest. This court found that it was improper for the defense counsel to use a document [which] the officer testified that he did not prepare or

- 10 -

complete[,] for purposes of impeachment. However, this court did permit defense counsel to question Officer Sampson on whether [Appellant] was wearing a white t-shirt and blue jeans at the time of the stop. Moreover, this court, without objection by the Commonwealth, allowed [d]efense counsel to mark and move the form 75-229 into evidence for review. As the fact-finder this court ultimately reviewed the form 75-229 and decided what weight to give the document.

(Trial Court Opinion at 12-13). The record supports the court's decision. The court properly prohibited defense counsel from trying to impeach Officer Sampson's credibility with statements the officer did not make or adopt. **See Simmons, supra**. Therefore, the court acted within its discretion when it sustained the Commonwealth's objection to the report for purposes of impeachment. **See Drumheller, supra**. Nevertheless, defense counsel was permitted to question Officer Sampson regarding his observations of Appellant's clothing, and the court admitted the 75-229 biographical information report as substantive evidence and considered it before reaching a verdict. Thus, Appellant's second claim merits no relief.

In his third issue, Appellant argues the offense of unauthorized use is subsumed within the crime of receiving stolen property. Appellant contends the court should have merged for sentencing his convictions for those offenses. Appellant also claims he spent multiple days in jail awaiting trial. Appellant asserts the court improperly imposed a sentence of three years' probation without giving Appellant credit for time served. Appellant concludes he is entitled to resentencing. We disagree.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Quintua***, 56 A.3d 399, 400 (Pa.Super. 2012), *appeal denied*, 620 Pa. 730, 70 A.3d 910 (2013). ***See also Commonwealth v. Edrington***, 780 A.2d 721 (Pa.Super. 2001) (stating legality of sentence claims cannot be waived, where reviewing court has proper jurisdiction). Merger of sentences is governed by Section 9765 of the Sentencing Code, which provides:

> **§ 9765. Merger of sentences**
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. The offenses of receiving stolen property and unauthorized use do not merge for purposes of sentencing. ***Commonwealth v. Campbell***, 505 A.2d 262 (Pa.Super. 1986) (*en banc*), *appeal denied*, 517 Pa. 602, 536 A.2d 1327 (1987).

> For receiving stolen property, the act is receiving; for unauthorized use, the act is operating an automobile. The mental element for receiving is that the defendant knew the property was stolen. The mental element for unauthorized use requires that the defendant knew that he did not have the owner's consent to operate the vehicle.

***Id.*** at 268.

Credit for time served is governed by the Sentencing Code in relevant

part as follows:

**§ 9760.  Credit for time served**

After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge **for which a prison sentence is imposed** or as a result of the conduct on which such a charge is based.  Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S.A. § 9760(1) (emphasis added).

Instantly, Appellant was convicted of receiving stolen property and unauthorized use.  These offenses do not merge for sentencing.  ***See Campbell, supra***.  Moreover, the court sentenced Appellant solely on the receiving stolen property conviction and imposed no further penalty for the unauthorized use conviction.

With respect to Appellant's contention that he was entitled to credit for time served, the court sentenced Appellant to a term of probation only.  Appellant received no prison sentence.  Therefore, the court had no obligation to give Appellant any credit for time served.  ***See*** 42 Pa.C.S.A. § 9760(1).  Based on the foregoing, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/30/2015