J-A08036-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DARRYL SEALS, | : | |
| | : | |
| Appellant | : | No. 2819 EDA 2016 |

Appeal from the Judgment of Sentence April 15, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003047-2013,
CP-51-CR-0003049-2013, CP-51-CR-0003051-2013

BEFORE:   PANELLA, LAZARUS, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED APRIL 30, 2018**

Darryl Seals (Appellant) appeals from the April 15, 2016 judgment of sentence of an aggregate term of 45 to 90 years of incarceration, imposed after a jury found him guilty of attempted murder, two counts of conspiracy to commit murder, and three counts of aggravated assault.[1]  Upon review, we affirm.

Appellant's convictions arose from an incident that occurred in the Gold Coast Lounge in Philadelphia, Pennsylvania.  On December 30, 2012, Shaquille Jones (Shaquille) was acting as a DJ for a family event there.  An altercation occurred around 2:00 a.m. involving the family, along with two men and two

---

[1] The trial court also found Appellant guilty of several firearms violations.

*Retired Senior Judge assigned to the Superior Court.

women. Those four individuals eventually left the location. Subsequently, Shaquille went to the downstairs of the bar to talk to his family, and the two men involved in the previous altercation came back into the bar through a backdoor. One of the men shot Shaquille in the leg then attempted to shoot Shaquille while he was down, but the gun did not fire that second time. Victims, Robert Edwards and Aaron Douglas, were also shot during this altercation.

Video of this shooting, eventually obtained by police from Florence Furman [Furman], a co-owner of the Gold Coast Lounge, was released to the media in January of 2013. Appellant and co-defendant, Paul Holloway, were identified as the shooters. Both were arrested and charged with numerous offenses, including attempted murder and conspiracy to commit murder, in connection with these shootings.[2]

Jury selection commenced against Appellant on January 26, 2016, and on February 2, 2016, the jury returned its verdict. Specifically, the jury found Appellant guilty of attempted murder of Shaquille, but acquitted Appellant of attempted murder of the other victims. Appellant was also found guilty of two counts each of conspiracy to commit murder and aggravated assault as to all three victims, as well as several firearms violations. On April 15, 2016,

_____

[2] On July 7, 2015, Holloway entered into a negotiated guilty plea to, *inter alia*, three counts of aggravated assault, and was sentenced to an aggregate term of eight to 20 years of incarceration.

Appellant was sentenced as indicated above.  Appellant timely filed a post-sentence motion, which was denied by operation of law.  Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant sets forth two issues for our review.

[1.] Did the trial court abuse its discretion in allowing the Commonwealth to present the incriminatory statement of absent witness Florence Furman?

[2.] Did the trial court err in refusing to inquire of jurors when one juror was using Google to determine the definition of criminal conspiracy?

Appellant's Brief at 3.

We consider first Appellant's argument that the trial court erred in admitting a statement by Furman.  Appellant's Brief at 7-14.  On January 7, 2013, Furman identified Appellant from the video she provided to police.  She authored a statement to Detective James Horn saying that Appellant was one of the shooters, and she recognized him specifically because Appellant is the father of her daughter's child.

On January 28, 2016, the Commonwealth filed a motion to admit the prior statement of Furman pursuant to Pa.R.E. 804(b)(6).  That rule provides an exception to the hearsay rule where a statement is offered against a party "that wrongfully caused … the declarant's unavailability as a witness, and did so intending that result." Pa.R.E. 804(b)(6).  In the motion, the Commonwealth averred that the Office of the District Attorney, through an

elder victim advocate, Catherine Khuu, attempted to keep in touch with Furman[3] and assist with getting her to come to court. On January 21, 2016, Furman informed Khuu that her husband had died and she was moving immediately to North Carolina, prior to the January 26, 2016 trial. Between January 22 and January 25, 2016, Furman left several additional messages for Khuu, which indicated she was wavering on her decision not to attend trial. Specifically, in one of those messages, Khuu overheard Furman speaking to someone in the background, stating: "I called the lady at the DA's Office like you told me to and I told her that I will be in court, but I'm going to do like you said and I'm going to go to my sister's house or someone else's house instead so if or when they come here to find me, they won't find me." Commonwealth's Motion, 1/28/2016, at 3.

In the meantime, on January 24, 2016, Appellant, from jail, called Furman's daughter, who is the mother of his child, and inquired as to whether everything was "in order." *Id*. The daughter responded, "everything's good." *Id*. Officers could not find any record of the death of Furman's husband, and they attempted to locate Furman at addresses with which she was associated. Being unable to locate Furman, the trial court issued a bench warrant on January 26, 2016.[4] Furman did not appear for trial, and the Commonwealth

---

[3] Furman was approximately 70 years old at the time.

[4] In another recorded phone call, Appellant called his mother, and during that conversation indicated he was aware of the bench warrant. *Id*. at 4.

- 4 -

filed the aforementioned motion to admit Furman's prior statement to police. The trial court granted the motion, and Furman's statements were read to the jury during trial. On appeal, Appellant argues that this was error.

In considering this issue, we first observe that the record does not reveal any place where Appellant objected to this testimony. Appellant did not file a response to the Commonwealth's motion. Moreover, Appellant has not cited to any portion of the transcript where he objected on the record to the admission of Furman's statement.[5] Additionally, our review of the transcripts reveals that during trial Appellant did not object to the testimony of Khuu or Detective Horn at any point. N.T., 1/28/2016, at 15-32, 82-84. It is well settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. Willis*, 552 A.2d 682, 690 (Pa. Super. 1988) ("It is axiomatic that only issues raised by specific objection in the trial court may be addressed on appeal."). While it is evident from Appellant's brief on appeal that Appellant did not want this statement to be admitted, any argument regarding this motion must not have taken place on the record.

> It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case. It is also well-settled in this jurisdiction that it is Appellant's responsibility to supply this Court with a complete record for purposes of review. A failure by [A]ppellant to insure that the original record certified for appeal contains sufficient information

---

[5] In addition, neither the Commonwealth nor the trial court reference an objection.

- 5 -

to conduct a proper review constitutes waiver of the issue sought to be examined.

***Commonwealth v. Martz***, 926 A.2d 514, 524–25 (Pa. Super. 2007) (internal citation and quotation marks omitted). Accordingly, we must conclude that this issue is waived.

However, even if Appellant had not waived this issue, he would not be entitled to relief. "The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." ***Commonwealth v. Antidormi***, 84 A.3d 736, 749 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id***. "An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant." ***Id***. at 750.

According to Appellant, permitting the statement by Furman was highly prejudicial, and the trial court erred in permitting its use where there was insufficient evidence to establish that Appellant caused Furman's unavailability by his wrongdoing pursuant to the hearsay exception.

However, in its opinion, it is clear that the trial court credited the testimony of Khuu and concluded that Furman lied to Khuu about her reason for not attending trial. The trial court pointed out that Furman was not able

to be found at any address, and this was consistent with information obtained from recorded phone conversations from Appellant. Thus, the trial court concluded it was reasonable to believe that Appellant had a hand in her unavailability at trial. *See* Trial Court Opinion, 8/4/2017, at 8. In addition, the trial court pointed to evidence produced by the Commonwealth that Appellant attempted to bribe another witness not to testify. Specifically, Shaquille's father testified that someone offered him money in exchange for his not testifying at trial. N.T., 1/28/2016, at 48-58. Thus, the trial court concluded that based upon this evidence, "it can be reasonably inferred that [Appellant], through the use of agents, intentionally attempted to cause the unavailability of witnesses, and in [] Furman's case, was successful in doing so." Trial Court Opinion, 8/4/2017, at 9. Based on the foregoing, even if Appellant had preserved this issue, he would not be entitled to relief.

Appellant next contends the trial court erred when it did not grant his request to inquire further of jurors after the jurors asked the court several questions while deliberating. Instantly, during the course of deliberations, some jurors made the trial court aware that other jurors "looked up the definition of conspiracy." N.T., 2/2/2016, at 3. Appellant asked the trial court to question the jurors about this issue to determine whether they looked up anything else. The trial court denied that request, and Appellant moved for a mistrial, which was denied. In resolving the jurors' questions, the trial court stated the following.

> The second question was, "Some of the jurors Googled the definition of conspiracy, is this allowed?" No. I gave you instructions early on that you were not to do anything on your own, but I do not think it's the type of error that in any way impacts the case. I did give you the charge on what conspiracy charge was and what you had to find if you were to find the defendant guilty of conspiracy, I did not believe looking up the definition is the type of error that should cause a mistrial or in any way impact our resolutions of the issues before us.

N.T., 2/2/2016, at 9-10.

On appeal, Appellant argues that the failure to question the jurors is reversible error under these circumstances in case the jurors "discussed this information with the other jurors." Appellant's Brief at 16. In addition, Appellant was concerned about what other information those jurors may have found. *Id*.

In considering this issue, we bear in mind the following. "It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted." *Commonwealth v. Brown*, 786 A.2d 961, 972 (Pa. 2001).

> An extraneous influence may compromise the impartiality and integrity of the jury, raising the specter of prejudice. The relevant inquiry is whether the extraneous influence caused a reasonable likelihood of prejudice. In making the reasonable likelihood of prejudice determination, the court must consider: (1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature. The burden is on the party claiming prejudice.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1115 (Pa. 2012) (internal citations and quotation marks omitted).

Here, the trial court concluded that it was not permitted to question the juror pursuant to the no impeachment rule.[6] However, the trial court also concluded that Appellant was not prejudiced because "the information was available to the jurors during trial as the jury was properly instructed on the various definitions, and the information was in no way inflammatory or emotional in nature." Trial Court Opinion, 8/4/2017, at 7.

To the extent the trial court did not colloquy the jurors because it believed it was not permitted to pursuant to the no impeachment rule, the trial court was incorrect. An exception to the no impeachment rule, which is applicable under these circumstances, provides that "[a] juror may testify about whether: (A) prejudicial information not of record and beyond common knowledge and experience was improperly brought to the jury's attention; or (B) an outside influence was improperly brought to bear on any juror." Pa.R.E. 606(b). "Under the exception to the no impeachment rule, a juror may testify only as to the existence of the outside influence, but not as to the effect this outside influence may have had on deliberations. Under no circumstances may jurors testify about their subjective reasoning processes." ***Commonwealth***

---

[6] This rule is codified in Pa.R.E. 606, which provides that "[a] juror is incompetent to testify as to what occurred during deliberations." ***Commonwealth v. Szakal***, 50 A.3d 210, 223 (Pa. Super. 2012).

***v. Messersmith***, 860 A.2d 1078, 1085 (Pa. Super. 2004) (internal citation and quotation marks omitted).

Thus, the trial court could have inquired about what extraneous information the juror or jurors may have obtained or overheard. What the trial court could not do was ask what effect, if any, this information had on deliberations. Despite this error, we agree with the trial court that Appellant was not prejudiced.

Based on the questions posed by the jurors in bringing this to the court's attention, it is evident the jurors were very forthcoming about any extraneous information the jury may have had. Furthermore, we agree with the trial court that even though the definition of a conspiracy was a central issue in this case, Appellant has not set forth any argument that he could have possibly been prejudiced by any definition of conspiracy that may have been obtained from Google by one or more jurors. ***See Szakal***, 50 A.3d at 224 (holding that Szakal was not entitled to a new murder trial despite a juror's admission that his daughter researched definitions of murder because the information was not inflammatory or emotional and did not provide the jury with information it did not otherwise have); ***Commonwealth v. Nypaver***, 69 A.3d 708, 719 (Pa. Super. 2013) (holding that Nypaver was not entitled to a new trial where a juror later indicated in a newspaper interview that he used the wrong definition of conspiracy when there was "no allegation that the trial court's

definition of conspiracy" provided in the jury instructions was incorrect). Accordingly, we hold that Appellant is not entitled to a new trial on this basis.

Appellant having presented no issue on appeal entitling him to relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/30/18