J-S30010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
TERRANCE SMITH   :
  :
Appellant   :   No. 2444 EDA 2017

Appeal from the Judgment of Sentence August 23, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000531-2013

BEFORE: PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:       **FILED NOVEMBER 08, 2019**

Appellant, Terrance Smith, appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, for attempted murder, robbery and related offenses.[1] We affirm.

On the evening of September 1, 2012, Johmeen Washington arrived at the Whitehall Apartments in Philadelphia to go to a birthday party at his aunt's apartment. He had just come from practicing shooting at a gun range and was still carrying the pistol he had used there. While at the Apartments, Washington was confronted by his ex-girlfriend's brother, Laquan Hayes, and the two quarreled about Washington's relationship with Hayes' sister. Washington walked away, went to his aunt's apartment to drop a birthday card off, and started to walk back to his car to go home.

_____

[1] There was no trial court opinion filed in this matter, as the trial judge was no longer sitting in Philadelphia County at the time of Appellant's appeal.

On the way back to his car, Washington passed his friend Khalid Boyd, who was also Hayes' cousin. Washington and Boyd proceeded to walk together towards Washington's car, and as they did so, Hayes appeared on a bicycle and rode up beside Washington. Hayes and Washington once again exchanged words, with Hayes telling Washington that he should "take [him] out right now." *See* N.T. Trial, 6/6/19, at 108. Just moments later, Appellant approached Washington from behind, held a gun to his head, and then patted Washington down as he told him "I'm going in your pockets to get your gun." *Id.*, at 85. Washington tried to wrestle the gun away from Appellant but Appellant shot him in the abdomen. Washington fell to the ground and felt his legs begin to tingle. From the ground, Washington retrieved his pistol and fired several shots toward his assailants before going limp.

Police arrived at the Whitehall Apartments at approximately 8:52 p.m. and transported Washington to Temple Hospital, where he was treated for his injuries, including a spinal cord injury. Despite four surgeries and extensive therapy, the shooting left Washington permanently paralyzed and confined to a wheelchair.

Appellant was arrested in connection with the shooting on September 11, 2012. Although the preliminary hearing was originally set for November 15, 2012, Washington was unable to appear due to his continued hospitalization and rehabilitation for his injuries sustained in the shooting. The hearing was rescheduled at the Commonwealth's request for January 11, 2013. Following that hearing, the attempted murder charge was dismissed for lack of evidence

- 2 -

but all other charges were held over for court. The Commonwealth filed a notice on January 29, 2013 that it would refile the complaint, and then filed amended complaints on May 8 and May 15, 2013.

After discovery was complete, the trial court held a scheduling conference on June 3, 2013, at which time the court scheduled trial for the earliest possible date of May 9, 2014. However, on May 6, 2014, Appellant filed a motion for a continuance, which the court granted, and trial was then listed for January 12, 2015. On January 12, 2015, Appellant filed a motion claiming he had been provided incorrect discovery. As a result, the case was relisted for July 16, 2015, but on July 15, 2015, defense counsel filed another motion for a continuance. The court granted the motion and relisted the case for January 14, 2016. However, counsel for Laquan Hayes, with whom Appellant was being tried jointly, filed a motion for a continuance on January 13, 2016 as counsel was ill. Trial was rescheduled for June 1, 2016.

Jury selection for Appellant and Hayes' joint trial began on June 2, 2016. On June 3, 2016, the trial court held a hearing on Appellant's motion to dismiss pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure ("Rule 600") and denied the motion. Following trial, on June 13, 2016, a jury convicted Appellant of attempted murder, robbery, carrying a firearm in public and related offenses. Appellant was sentenced to an aggregate term of twenty to forty-five years of imprisonment, and the trial court denied Appellant's subsequently filed motion for reconsideration of sentence.

This Court then dismissed Appellant's timely appeal for failure to file a docketing statement. Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A §§ 9541-9546, alleging appellate counsel's ineffectiveness. Counsel was appointed and filed an amended petition, which the PCRA court granted, reinstating Appellant's direct appeal rights *nunc pro tunc*. This appeal followed.

Appellant first argues that the evidence at trial was insufficient to convict him of attempted murder. Specifically, Appellant contends that there was insufficient evidence to establish that he had a specific intent to kill Washington. This claim fails.

"Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. Blakeney*, 946 A.2d 645, 651 (Pa. 2008) (citations omitted). To sustain a conviction for attempted murder, the Commonwealth must prove that the defendant had the specific intent to kill and took a substantial step toward that goal. *See id.,* at 652. Specific intent may be proven solely by circumstantial evidence. *See id.,* at 651. As such, specific intent to kill may be inferred from a person's use of a deadly weapon upon a vital part of another person's body. *See id.*

Here, Appellant shot Washington in the abdomen, which this Court has previously held to be a vital part of the body. *See Commonwealth v Robertson*, 874 A.2d 1200, 1207 (Pa. Super. 2005) (stomach is vital part of

body for purposes of establishing specific intent to kill in attempted murder charge). Appellant seems to argue, however, that the Commonwealth failed to prove that he intended to kill Washington because the evidence shows only that Appellant was "attempting to steal [Washington's] gun and that a tussle ensued in which [Washington] got shot." Appellant's Brief at 8. As the Commonwealth points out, such an argument would essentially have this Court look at the evidence in the light most favorable to Appellant and not, as our standard of review requires, to the Commonwealth as the verdict winner.

In any event, the record below establishes that Appellant approached Washington and shot him in the abdomen. Appellant fails to explain how the fact that the shooting occurred during a tussle – which, notably, only arose from Washington's attempt to protect himself from the gun Appellant was pointing at him - undermines the jury's finding that Appellant intended and attempted to kill Washington, which is clearly supported by the evidence. **See Commonwealth v. Washington**, 927 A.2d 586, 607 (Pa. 2007) ("the critical inquiry is the use of a deadly weapon on a vital part of the body, not the intentional aiming of the weapon at a vital part of the body") (citation omitted).

Appellant next argues that the trial court erred in denying his motion to dismiss pursuant to Rule 600 when it took the Commonwealth 1,365 days to bring him to trial. This claim also fails.

In general, Rule 600 requires that a defendant be brought to trial within 365 days from the filing of the criminal complaint. **See Commonwealth v. Moore**, 214 A.3d 244, 248 (Pa. Super. 2019). Although this calculation includes

any "periods of delay …. caused by the Commonwealth when [it] has failed to exercise due diligence," it excludes "[a]ny other periods of delay." Pa.R.Crim.P. 600(C)(1). Accordingly, periods of delay caused by the defendant are excluded from the calculation. **See Moore**, 214 A.3d at 248. Likewise, periods of delay that are caused by circumstances beyond the Commonwealth's control and despite its due diligence are considered "excusable delay" and do not count in the 365-day tally. **See id.,** at 248-49. In evaluating Rule 600 issues, this Court's standard of review is whether the trial court abused its discretion. **See id.,** at 247.

Here, in denying Appellant's Rule 600 motion below, the trial court went through the docket and found that the defense had filed numerous continuance motions which had caused delay that could not be attributable to the Commonwealth. **See** N.T. Trial, 6/6/16, at 7-11, 14. The court also determined that delay caused by the Commonwealth had not resulted from any lack of due diligence on its part. **See id.**, at 13-14. Appellant now asserts, in essence, that the trial court erred by reaching this conclusion because the Commonwealth was not duly diligent in bringing him to trial as it was responsible for three extended periods of delay, totaling 833 days.[2]

_____

[2] It is arguable that this claim is waived due to Appellant's failure to adequately cite to the record. **See** Pa.R.A.P. 2119(c) (requiring appellants to cite to record when raising matters that reference the record). Appellant alleges that these three overarching periods of time constituted periods of delay caused by the Commonwealth but he does so without accounting for other docket entries during the relevant time period and without referencing the record once in his

Appellant first claims that the Commonwealth did not act with due diligence when it caused the 128-day delay between the filing of the complaint against him on September 5, 2012 and his preliminary hearing on January 11, 2013. Appellant offers no explanation or argument in support of his claim, instead acknowledging in his brief that there "may have been a reason to delay the preliminary hearing." Brief of Appellant at 10. Appellant is correct in this regard.

As the trial court pointed out, the preliminary hearing was originally scheduled for November 15, 2012 but was continued at the Commonwealth's request because Washington was still recovering from his injuries that stemmed from the shooting in the instant case. Even Appellant seems to concede that this period of delay should not be attributable to the Commonwealth, and we see no abuse of discretion in the trial court's conclusion that this time was excusable. *See Commonwealth v. Frye,* 909 A.2d 853, 858 (Pa. Super. 2006)(delay in proceeding with the preliminary hearing due to victim's hospitalization for injuries caused by the crime at issue constituted excusable delay).

Next, Appellant alleges that the 124-day period between the dismissal of the attempted murder charge at the January 11, 2013 preliminary hearing and the Commonwealth's refiling of the complaint on May 15, 2013 is also

_____

argument section. The confusion stemming from these omissions is only exacerbated by the fact that Appellant fails to explain or develop his claims in a meaningful way.

- 7 -

attributable to the Commonwealth because it did not exercise due diligence during this period. The only support Appellant offers for this contention is that "there was no reason [for the Commonwealth] to take 124 days to file informations." Brief of Appellant at 9.

As the docket reflects, Appellant's attempted murder charge was dismissed for lack of evidence at the preliminary hearing on January 11, 2013, but all other charges were held over for court. The Commonwealth filed a notice on January 29, 2013 that it was refiling the complaint and then filed amended complaints on May 8 and 15, 2013. Following the hearing on Appellant's Rule 600 motion, the trial court specifically found that "certainly, there has been a showing of diligence on the part of the Commonwealth by refiling and making effort to move the case forward." N.T. Trial, 6/3/16, at 13. Appellant's bald assertion to the contrary does not in any way demonstrate that the trial court erred in reaching this conclusion.

This is especially true in light of the docket activity that took place during the time period of which Appellant now complains. As the Commonwealth points out, much of the time that elapsed between the January 11, 2013 preliminary hearing and the refiling of the complaint on May 15, 2013 was actually excludable time attributable to the defense. During that time, the docket shows that at the preliminary hearing on January 11, 2013, the next court date was scheduled for February 1, 2013. *See* Docket MC-51-CR-0037094-2012, at Entry 19. Appellant appeared at that court date, but had failed to retain counsel. *See* Docket CP-51-CR-0000531-2013, at Entry 28.

The court continued the matter and appointed counsel for Appellant, but appointed counsel failed to appear at the following court date on March 6, 2013 and the next court date was listed for April 24, 2013. *See id.*, at Entry 36. However, on April 19, 2013, defense counsel filed a motion for a continuance, which the trial court granted. *See id.*, at Entry 41. The court then scheduled the next court date for May 8, 2013, which is the date on which the Commonwealth filed an amended information. *See id.*, at Entries 41, 44. Clearly, given this steady stream of delays caused by the defense, the trial court did not abuse its discretion in finding that this time was not attributable to the Commonwealth. *See Moore*, 214 A.3d at 248.

Lastly, Appellant appears to maintain that the Commonwealth was not duly diligent during the 581-day delay between the Commonwealth passing discovery on June 3, 2013 and Appellant's realization on January 12, 2015 that the Commonwealth had not, according to Appellant, passed the correct discovery. The record, however, does not support Appellant's contention that the Commonwealth passed incorrect discovery. Rather, the record reflects that the Commonwealth sent discovery to Appellant's counsel but counsel did not realize that he had the discovery because it had been sent under the name of Appellant's co-defendant, Laquan Hayes. *See* N.T. Trial, 6/3/16, at 9-10. As the trial court noted below, it was "all the same discovery." *Id.*, at 10. Appellant cites to no case law that would support attributing this time to the Commonwealth under these circumstances.

Instead, Appellant cites to **Commonwealth v. Mills**, 162 A.3d 323 (Pa. 2017), for the proposition that the Commonwealth's failure to provide complete discovery is considered delay attributable to the Commonwealth. This is not what *Mills* stands for.

Rather, in *Mills*, the Court held that the trial court may exercise its discretion to exclude judicial delay "arising out of its own scheduling concerns" from the Rule 600 calculation when the Commonwealth is trial-ready. *Id.*, at 325. In that case, however, the Commonwealth did not argue that it had been trial-ready and indeed, it had filed a motion to continue trial because it could not yet provide complete discovery, the assigned prosecutor was to be on vacation on the trial date, and DNA testing was being contemplated. *See id.*, at 324-25.

Here, the facts are notably different.[3] We see no error in the trial court's failure to attribute this 581-day period to the Commonwealth.[4] As a result, Appellant's claim that the trial court abused its discretion by denying his Rule 600 motion is without merit.

In his third and final claim to this Court, Appellant asserts that the sentencing court abused its discretion by considering the prosecutor's

---

[3] Indeed, as the Commonwealth points out, discovery in this case was already completed on the date Appellant alleges the 581-day period of delay began.

[4] Moreover, Appellant does not address the fact that on June 3, 2013, the trial court scheduled trial for the earliest possible date of May 9, 2014, and Appellant does not assert that this was delay attributable to the Commonwealth. *See* N.T. Trial, 6/3/16 at 14 (citing court congestion as one of the reasons for delay in bringing Appellant to trial).

- 10 -

unsupported statements concerning Appellant's alleged involvement in a prior shooting case that was *nolle prossed*. This claim is waived.

Appellant's claim raises an issue related to the discretionary aspects of his sentence. **See Commonwealth v. P.L.S.,** 894 A.2d 120, 127 (Pa. Super. 2006) (claim that sentencing court improperly relied upon impermissible factors such as uncharged conduct challenge the discretionary aspects of sentence). Challenges relating to the discretionary aspects of sentencing are not appealable as of right. **See Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1265 (Pa. Super. 2014). Rather, this Court will invoke its jurisdiction to reach the merits of such a claim only if the appellant satisfies all elements of a four-part test. **See id.** In that test, we look to see:

> …(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect [pursuant to Pa.R.A.P.2119(f)]; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Id.,** at 1265-66 (citations omitted).

Applying this four-part test to Appellant's claim here, it is clear from the outset that Appellant has not satisfied prong two. Appellant failed to raise his sentencing claim either during his sentencing proceedings or in his post-

sentence motion and his claim is therefore waived.[5] *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (issues challenging discretionary aspect of sentence are waived if they are not raised either during sentencing proceedings or in post-sentence motion). [6]

Judgment of sentence affirmed.

_____

[5] In his Motion for Reconsideration of Sentence, Appellant merely asserted that he "believe[d] that the stacking of sentences puts him way over the guideline outlined by the Pennsylvania Commission on Sentencing." Motion For Reconsideration of Sentence, 9/2/16, at 1.

[6] Even if Appellant's claim was not waived, it lacks merit. Appellant complains of the prosecutor's "unsupported statements" of a shooting in which he was allegedly involved, but he does not elaborate on what the prosecutor said. The record shows that when going through Appellant's lengthy prior record for the sentencing court, the prosecutor noted that Appellant had been arrested in 2009 for a shooting. *See* N.T. Sentencing, 8/23/16, at 10. The prosecutor stated that the victim of that shooting had positively identified Appellant as one of the shooters at a preliminary hearing but when the victim could not subsequently be located, the case had been *nolle prossed*. *See id.,* at 10-11. When sentencing Appellant below, the court recognized that the case had been *nolle prossed* and merely referred to it as one in a long list of criminal cases in which Appellant had been involved, including two juvenile adjudications for delinquency, nineteen arrests and seventeen convictions. *See id.,* at 15-16. As the Commonwealth notes, this extensive criminal history is certainly relevant to the court's duty to protect the public when imposing sentence. Appellant makes no meaningful attempt to explain, and we fail to see, how the sentencing court committed a manifest abuse of discretion under these circumstances. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (sentence will not be disturbed on appeal absent a manifest abuse of discretion).

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/8/19</u>