J-S19040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                       :            PENNSYLVANIA
                                         :
               v.                            :
                                         :
                                         :
VERNON BENNETT,                        :
                                         :
              Appellant                 :            No. 1133 EDA 2019

Appeal from the Judgment of Sentence Entered January 7, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003503-2013

BEFORE: BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:           **FILED AUGUST 12, 2020**

Vernon Bennett ("Bennett") appeals from the judgment of sentence imposed following his convictions of theft by unlawful taking and robbery.[1] We affirm.

The trial court summarized the relevant factual and procedural history as follows:

> On February 25, 2013, at approximately 8:30 p[.]m[.], Tara Whitaker ("Whitaker") was working as a bartender at the Commodore Lounge[,] located at 5507 Baltimore Avenue, Philadelphia, PA. [Bennett] entered the lounge at approximately 8:30 p[.]m[.,] and sat near the cash register close to the entrance to the bar where the bartenders come in and out of their service area. Whitaker testified that after sitting down at the bar, [Bennett] gestured [for] her to come to him. Whitaker went over to [Bennett] and asked if she could get him something. [Bennett] then slightly moved his hand out of his pant pocket and showed Whitaker the handle of a black gun, then put it back in his pocket. Next, [Bennett] ordered Whitaker to get a brown paper bag,

---

[1] 18 Pa.C.S.A. §§ 3921(a), 3701(a)(1).

empty out the cash register[,] and put the money in the bag. Whitaker retrieved a brown paper bag and filled it with money from the cash register and gave it to [Bennett].

[Bennett] then demanded Whitaker hand over another bag of money. Whitaker placed a purple Crown Royal whiskey bag containing one dollar bills and quarters into the brown paper bag. [Bennett] then calmly walked out of the bar. Whitaker whispered to a patron that [Bennett] just robbed her. One of the patrons left the bar to find [Bennett]. At approximately 9:35 p[.]m[.], [Philadelphia Police] Officers [Patrick] Thompson [("Officer Thompson")] and [Paul] Buzzone [("Officer Buzzone")] were patrolling the area of 55th and Baltimore Avenue, in close proximity to the bar, when they were flagged down by three bystanders. After receiving information from the bystanders, Officer[] Thompson and [Officer] Buzzone drove down Angora Terrace.

The [o]fficers noticed a male chasing [Bennett] down the sidewalk. The male chasing [Bennett] informed [the o]fficers that [Bennett] just robbed him. Officers then placed [Bennett] in custody. Officer Buzzone found a purple Crown Royal bag with money near the street next to a parked vehicle on the path [Bennett] took from the bar to the location of being apprehended.

On September 12, 2018, [Bennett] was found guilty by a jury of [t]heft by [u]nlawful [t]aking of [m]ovable [p]roperty and [r]obbery. On January 7, 2019, [the trial court] sentenced [Bennett] to twenty-five (25) years to life imprisonment for the charge of [r]obbery[,] pursuant to [the "three strikes law," 18 Pa.C.S.A. § 9714(a)(2),] and [r]obbery. [Bennett filed a post-sentence Motion, which the trial court denied on January 25, 2019.] No direct appeal was taken. On March 7, 2019, [Bennett's] trial counsel filed a [Post Conviction Relief Act ("PCRA")[2] P]etition raising his own ineffective assistance due to his failure to file a direct appeal. On March 25, 2019, th[e trial c]ourt granted [Bennett's] PCRA [P]etition[,] and restored [Bennett's] direct appeal rights[,] *nunc pro tunc*. The [c]ourt appointed new counsel, and allowed new counsel to file a notice of appeal within thirty (30) days. Pursuant to t[he trial c]ourt's March 25, 2019 Order, [Bennett] filed a timely counseled Notice

---

[2] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

of Appeal on April 9, 2019. On April 22, 2019, th[e trial c]ourt ordered [Bennett] to file a [s]tatement of [m]atters [c]omplained of on [a]ppeal pursuant to Pa.R.[A.]P. 1925(b) ("1925(b) Statement"). [Bennett], through counsel, filed a timely 1925(b) Statement on May 13, 2019.

Trial Court Opinion, 6/25/19, at 1-3 (footnote added; footnotes omitted).

Bennett raises the following issues for our review on appeal:

1. Whether the verdict was against the weight of the evidence[?]

2. Whether the verdict was contrary to law[?]

3. Whether the [trial] court was in error in denying the [Pa.R.Crim.P.] 600 Motion[?]

4. Whether the Commonwealth committed a **Brady** [**v. Maryland**, 373 U.S. 83 (1963),] violation when it failed to produce the police file[?]

Brief for Appellant at 8.

We will address Bennett's first two issues together. First, Bennett claims that the jury's guilty verdict was against the weight of the evidence. Brief for Appellant at 13. Bennett argues that Whitaker's testimony that Bennett possessed a gun during the robbery was "so unreliable and contradictory that any verdict of guilt could only have been arrive[d] at through speculation and conjecture." **Id.** at 14. Specifically, Bennett points to the jury's acquittal of the charges related to Bennett's possession of the firearm as evidence that Whitaker's testimony was unreliable. **Id.** at 13. Bennett claims that no video or physical evidence exists to demonstrate that he possessed a firearm, and that no firearm was recovered after the incident. **Id.** at 14. Though Bennett concedes that a felony robbery can be committed by placing the victim in fear

- 3 -

that the actor was concealing a firearm, Bennett argues that Whitaker's testimony that she saw a firearm on Bennett's person is contradicted by other evidence. *Id.* at 14-15. Second, Bennett challenges the sufficiency of the evidence based upon the credibility of the witness. *Id.* at 15. Bennett argues that "[a]s indicated [] in the weight of the evidence argument, the contradictory and unreliable testimony of []Whitaker established that the verdict was contrary to law on the robbery and theft charges." *Id.* at 16.[3]

Our standard of review over challenges to the weight of the evidence is clear:

> [a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Talbert*, 129 A.3d 536, 545-46 (Pa. Super. 2015) (citation omitted). With regards to a weight challenge based on witness

---

[3] Though Bennett characterizes this argument as a challenge to the sufficiency of the evidence, challenges to the credibility of witness testimony is a challenge to the weight of the evidence, not its sufficiency. *See Commonwealth v. Price*, 616 A.2d 681, 683 (Pa. Super. 1992) (explaining that, while a sufficiency challenge asks whether the evidence exists on the record to sustain the conviction, an argument that the witness's account is not credible goes to the weight of the evidence).

credibility, "our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004) (citation omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003).

In its Opinion, the trial court addressed Bennett's challenge to the weight of the evidence presented against him as follows:[4]

> [Bennett] claims that the verdict was contrary to law because the testimony presented was so contradictory and unreliable that the verdict of guilty cannot stand. This argument also fails because the testimony in this case was supported by video evidence of the robbery, and statements that [Bennett] made on his recorded prison phone calls. At trial, the jury observed a video of [Bennett] committing the robbery, listened to a prison phone call made by [Bennett,] and heard testimony from [Whitaker] and police officers.
>
> Based on the cumulative evidence, the jury determined that [Bennett] was guilty of [t]heft by [u]nlawful [t]aking of [m]ovable [p]roperty and [r]obbery. The video, supplemented by the testimony of [Whitaker], clearly shows [Bennett] is guilty of [r]obbery, as in the course of committing theft he[,] *inter alia*,

---

[4] We note that the trial court, prior to addressing Bennett's challenge to the weight of the evidence on its merits, concluded that the issue was waived on the basis that Bennett had failed to raise the issue in a post-sentence motion. Trial Court Opinion, 6/26/19, at 4. Our review of the record discloses that Bennett did, in fact, argue that his verdict was against the weight of the evidence in his post-sentence Motion. *See* Post Sentence Motion, 1/16/19, at ¶ 16.

threatened [Whitaker] with or intentionally put her in fear of immediate serious bodily injury. Moreover, in the course of committing the theft, [Bennett] physically took or removed property from [Whitaker] by force, however slight.

[Bennett's] assertion that [Whitaker] did not see a gun is incorrect. Whitaker testified that she saw the handle of the gun. Whitaker also testified that she was nervous and afraid for her life during the robbery.

Additionally, [Bennett] was apprehended a very short time after the robbery by police officers in the vicinity of the robbery. In addition to the testimony by [Whitaker] the jury heard testimony from several police officers, including Officer Paul Buzzone, who helped detain [Bennett] and recover the proceeds of the robbery. Officer Buzzone recovered the Crown Royal bag filled with money, which is the same bag that Whitaker testified was taken by [Bennett] during the robbery. Officer Buzzone testified that the bag was found near the street next to a parked vehicle on the path [Bennett] took from the bar to being apprehended.

[Bennett] made statements during prison phone calls, which were played at trial, which corroborated the testimony of [Whitaker] and Officer Buzzone. [Bennett] claims that he was trying to "get the bread[.]"[] He also states the only reason he got caught. [Bennett] claimed that he had a good shot of beating this case and stated[,] "they got me on camera, you know[.]"[] Moreover, he stated, "I'ma [*sic*] have to get convicted for theft, because that's really all it was." Based on the witness testimony, prison calls and video of the robbery, the jury determined that [Bennett] was guilty of robbery. The weight of the evidence clearly supported the verdict.

Trial Court Opinion, 6/25/19, at 5-7 (citations omitted). We agree with the

sound analysis of the trial court, and conclude that it did not abuse its

discretion in ruling that the weight of the evidence supported Bennett's

convictions. ***See id.***; ***see also Commonwealth v. Talbert***, 129 A.3d 536,

545 (Pa. Super. 2015) (stating that "it is well-settled that inconsistent verdicts

are permissible in Pennsylvania," and "[w]hen an acquittal on one count [] is

inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of power which they had no right to exercise, but to which they were disposed through lenity.") (citations and quotations omitted).

A challenge to witness credibility can be reviewed as a sufficiency challenge "in those extreme situations where witness testimony is so inherently unreliable and contradictory that it makes the jury's choice to believe that evidence an exercise of pure conjecture." *Commonwealth v. Brown*, 52 A.3d 1139, 1156 n.18 (Pa. 2012). To the extent that Bennett raises a challenge to the sufficiency of the evidence, we agree with the trial court's conclusion that the Commonwealth proved each material element underlying his convictions for theft by unlawful taking and robbery. *See* Trial Court Opinion, 6/25/19, at 5-6. We also conclude that Whitaker's testimony—which, as the trial court indicated, was supported by contemporaneous evidence—was not so inherently unreliable and contradictory that it made the jury's choice to believe her testimony an exercise of pure conjecture. *See Brown*, *supra*. Accordingly, we grant Bennett no relief on these claims.

Next, Bennett argues that the trial court abused its discretion when it denied his Motion under Pa.R.Crim.P. 600. Brief for Appellant at 16. Specifically, Bennett claims that the trial court had ordered the Commonwealth to produce the full police file for Bennett's review, and that the Commonwealth failed to do so. *Id.* at 16-17. Because of this failure,

according to Bennett, the Commonwealth failed to exercise due diligence in timely prosecuting the case against him. *Id.* Accordingly, Bennett argues that the entire time period between October 12, 2016, when the trial court purportedly ordered that the file be produced, and September 10, 2018, when the trial commenced, should have counted towards the statutory time period in Rule 600. *Id.* at 17.

> Under Rule 600, the Commonwealth must bring a case to trial within 365 days of the criminal complaint's filing. Pa.R.Crim.P. 600(A)(2)(a). Our standard of review relating to the application of Rule 600 is whether the trial court abused its discretion. Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. We must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Robbins*, 900 A.2d 413, 415 (Pa. Super. 2006) (citation omitted); *see also Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015)(explaining that "[a]n abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will."). While delays in bringing the case to trial that are attributable to the Commonwealth are included in the 365 day time period, delays that are attributable to the defendant or the trial court are not included. Pa.R.Crim.P. 600(C); *see also Commonwealth v. McCarthy*, 180 A.3d 368, 376 (Pa. Super. 2018) (recognizing that a delay that resulted from the unavailability of time on trial court's calendar was excludable from the Rule 600 calculation);

- 8 -

***Commonwealth v. Frye***, 909 A.2d 853, 859 (Pa. Super. 2006) (stating that, "[i]n conducting the due diligence inquiry, our jurisprudence has excused such delay resulting from court congestion.").

Here, Bennett's Rule 600 claim is premised solely on a purported delay in the Commonwealth's production of discovery materials. Specifically, Bennett directs our attention to the time period between October 12, 2016, the date he alleges the Commonwealth began its failure to act with due diligence, and September 10, 2018, the date his trial began. The Commonwealth filed its Criminal Complaint against Bennett on February 26, 2013. Thus, the mechanical run date for Rule 600 purposes was February 26, 2014. Bennett's trial commenced on September 10, 2018, 1,657 days beyond the mechanical run date.

Our review of the record discloses that in this case, Bennett was "instrumental in causing the delay." Pa.R.Crim.P. 600, *Cmt*. Indeed, either Bennett or the judiciary caused the following periods of delay: April 24, 2013, to May 3, 2013 (Bennett's Motion to continue); May 3, 2013, to October 7, 2013 (Bennett's Motion to suppress evidence); October 7, 2013, to May 19, 2014 (Bennett's Motion to continue); May 19, 2014, to June 2, 2014 (Bennett's omnibus pretrial Motion); June 2, 2014, to August 27, 2014 (Bennett's Motion to continue); August 28, 2014, to September 2, 2014 (Bennett's Motion to continue); September 2, 2014, to September 9, 2014 (scheduling conflicts with Bennett's counsel); September 9, 2014, to March 9,

2015 (Bennett's Motion to continue); March 9, 2015, to March 24, 2015 (Bennett's Motion to continue); March 24, 2015, to December 7, 2015 (trial court scheduling trial); December 7, 2015, to December 17, 2015 (Bennett's counsel was unavailable for trial); December 17, 2015, to January 27, 2016 (trial court continuance to locate notes of testimony); October 21, 2016, to January 12, 2017 (Bennett's Motion to continue); January 12, 2017, to October 16, 2017 (trial court scheduling new trial); October 16, 2017, to November 2, 2017 (Bennett's request for new counsel); November 2, 2017, to November 9, 2017 (Bennett's counsel was unavailable); November 9, 2017, to May 21, 2018 (Bennett's motion to continue); May 21, 2018, to September 10, 2018 (Bennett's motion to proceed *pro se*, and then to proceed with counsel). *See* Trial Court Opinion, 6/26/19, at 7 (wherein the trial court, referencing the docket, states that all of the requests for continuances from October 2016 to September 2018 "were either joint requests or time requested by the defense.").

In total, 1,696 days are attributable to Bennett and the trial court; hence, this time is excludable for purposes of Rule 600. Adding the excludable time to the mechanical run date, we calculate the adjusted run date to be October 19, 2018, 39 days after the date Bennett's trial began. Because Bennett's trial commenced within the adjusted run date, we discern no abuse of discretion by the trial court in rejecting Bennett's Rule 600 claim.

Moreover, Bennett's argument that the Commonwealth failed to prosecute his case with due diligence is also without merit. When evaluating a claim that the Commonwealth failed to act with due diligence in prosecuting an appellant's case under Rule 600, we emphasize that "[d]ue diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth." ***Commonwealth v. Ramos***, 936 A.2d 1097, 1102 (Pa. Super. 2007) (emphasis in original).

In its Opinion, the trial court addressed this issue as follows:

> [Bennett] claims that the Commonwealth violated [the trial court's] Order to produce a police file, thereby causing a period of delay between October 12, 2016[,] and September 10, 2018. This argument fails because, as the docket reflects, there was no Order for the Commonwealth to turn over a police file. While [the trial court] inquired about the police file, there was no order to turn the police file over to [Bennett] or his counsel. N.T.[,] 10/12/[]16, at [13, 77]. The docket entry of October 12, 2016[,] reflects that the matter was continued to October 13, 2016[,] for the police file to be produced, but there is no Order that the police file be produced. Docket, page 21, #5.
>
> * * *
>
> No Protective Order was sought by the Commonwealth [pursuant to Pa.R.Crim.P. 573,] and [Bennett] has received the material items that the Commonwealth is required to disclose from the Commonwealth through reciprocal discovery. The items mandated by discovery rules in the police file were tendered by the Commonwealth[,] and produced at trial without objection. N.T.[,] 9/11/[]18[,] at 139, 18. … Therefore, the Rule 600 [M]otion was properly denied, as there was no delay by the Commonwealth. N.T.[,] 9/10/[]18, at 29. Furthermore, the Commonwealth represented, on the record, that the police file was

- 11 -

reviewed for further discoverable and relevant information to the case. If anything was found[,] it was made available to the defense. N.T.[,] 9/10/18[,] at 29, 4. The statement by the Commonwealth is consistent with the docket of October 13, 2016[,] stating that discovery was still the subject of continuance requests. However, **subsequent to October 20, 2018[,] there is no further mention of continuance for discovery pertaining to the police file**. Furthermore[,] the court finds that, if in fact, there was an Order to give [Bennett] access to the police file, a reasonable interpretation of that Order would be that the Commonwealth turn over the discoverable information in the police file. N.T.[,] 9/1[0]/[]18[,] at 24, 8.

Trial Court Opinion, 6/26/19, at 7-9 (emphasis added).

Here, as discussed above, the delays and continuances were not attributable to the Commonwealth's inability to try Bennett's case, nor are the delays and continuances the result of the Commonwealth's lack of due diligence. Rather, the record reveals no indication that the Commonwealth was out of compliance with a court order or not exercising due diligence with regard to the October 12, 2016 request by the trial court for the detective to bring the police file into court for the trial court's examination. We conclude that the trial court did not abuse its discretion in denying Bennett's Rule 600 Motion, and Bennett is entitled no relief on this claim. *See McCarthy*, *supra*; *Frye*, *supra*.

Fourth, Bennett argues that the trial court abused its discretion when it denied his Motion for pretrial disclosure, discovery, and inspection. Brief for Appellant at 18. He claims that because the police file may have contained exculpatory information, it should have been produced by the Commonwealth. *Id.* at 19. Bennett points again to the circumstances underlying his Rule 600

Motion, and argues that the Commonwealth's failure to provide him with the full police file upon request constitutes a *Brady* violation and warrants that his convictions be overturned. *Id.*

As an initial matter, though Bennett characterizes this Motion as a *Brady* motion, he actually argues that the Commonwealth failed to comply with a discovery "order" when it did not provide him with the full police file. The trial court ably addressed the nature of this "order" in its Opinion, which we discussed in full above. *See* Trial Court Opinion, 6/25/19, at 7-9. We agree with the trial court's conclusions, and discern no abuse of discretion in its determination that the Commonwealth complied with all necessary discovery requests. Accordingly, Bennett is entitled to no relief on this claim.

To the extent that Bennett argues a *Brady* violation by the Commonwealth, he would also be entitled to no relief. In order to demonstrate a *Brady* violation, a defendant must show that (1) the evidence was favorable to the accused, either because it was exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001) (citation omitted). However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Commonwealth v. Chambers*, 807 A.2d 872, 887 (Pa. 2002) (citation omitted). Evidence is material "only if

- 13 -

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 887-88 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Bennett does not specifically allege that exculpatory evidence actually exists; rather, he argues that "potentially material and exculpatory evidence was suppressed by the Commonwealth." Brief for Appellant at 19. While Bennett points out that due process requires that all discoverable evidence be provided to a defendant, he presents no evidence that the Commonwealth failed to provide him with relevant discovery information. Accordingly, Bennett has failed to meet his *Brady* burden. *See Commonwealth v. Willis*, 46 A.3d 648, 670 (Pa. 2012) (stating that "a defendant necessarily must identify specific evidence or information that would have been uncovered, and explain how that evidence or information would have changed the result of the proceeding," and that mere speculation by a defendant is insufficient) (internal citation omitted).

Further, as the trial court notes, the evidence introduced at trial against Bennett was significant. Trial Court Opinion, 6/26/19, at 9-10 (wherein the trial court states that the jury reviewed video evidence of Bennett committing the robbery, eyewitness testimony of the robbery, recorded inculpatory statements made by Bennett while in prison, and physical evidence of the robbery recovered in proximity to where Bennett was arrested). As a result,

Bennett's argument that the evidence, to the extent that it exists, would have materially changed the outcome of his trial is not supported by the record. Because Bennett has failed to articulate any of the elements of a successful **Brady** challenge, we cannot grant him relief on this claim.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/12/2020*